In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00407-CR
_____

**JOSEPH HENRY EVANS JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR31582

**MEMORANDUM OPINION**

A grand jury indicted Appellant Joseph Henry Evans Jr. for indecency with a child by sexual contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West Supp. 2017).[1] A jury found Evans guilty and assessed punishment at seventy-five years and a fine of $10,000. Evans brings three issues on appeal. In his first issue he argues

---

[1] We cite to the current version of the statute because subsequent amendments do not affect our disposition.

ineffective assistance of counsel. Second, he contends there was error in the jury charge, and third that the evidence is insufficient. We overrule his issues and affirm.

Background

On February 18, 2015, a grand jury indicted Evans for the offense of indecency with a child by sexual contact. The indictment alleged that Evans

. . . on or about the 26th day of July A.D. 2014, . . . did then and there, with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact with [M.D.],[2] . . . by touching the genitals of [M.D.], a child younger than 17 years of age[.]

Evans pleaded "not guilty."

Outside the presence of the jury, the trial court held a hearing under article 38.072 of the Texas Code of Criminal Procedure regarding the admissibility of certain hearsay statements of a child under the age of fourteen made to the first adult—her mother, J.D.—to whom the child reported the abuse. The trial court concluded that J.D.'s testimony concerning M.D.'s outcry statement was admissible.

The court also considered whether the testimony of J.D. and M.G. (J.D.'s cousin) concerning extraneous offenses was admissible under article 38.37 of the Texas Code of Criminal Procedure. Also at trial, but outside the presence of the jury,

---

[2] We use initials to refer to the victim and family members herein. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

the court considered whether the testimony of A.C. (J.D.'s sister) concerning extraneous offenses was admissible under article 38.37. The court concluded that the testimony of J.D. and A.C. (Evans's daughters), and of M.G. (Evans's niece) concerning extraneous conduct was adequate to support a finding by the jury that Evans committed the acts beyond a reasonable doubt.

Testimony of Sergeant Darrell Elliott

Sergeant Darrell Elliott testified that he is an investigator with the Liberty County Sheriff's Office in charge of sex crimes and crimes against children. Elliott explained that he became involved in this case in July of 2014. Elliott identified State's Exhibits 1, 2, and 3 as photographs he took that depict the location where the alleged crime occurred. According to Elliott, the report from M.D.'s examination by a sexual assault nurse examiner (SANE) reflected that no DNA results were relevant to the case. Elliott also explained that he learned that three adult women were also making claims of inappropriate sexual contact by Evans. Elliott agreed that there were apparently no witnesses to the alleged crime, and Evans declined to be interviewed by Elliott.

Elliott testified that he did not meet with M.D., but he did meet with M.D.'s mother when the mother filed a secondary complaint in May of 2016. Elliott explained that he also met with M.G. in May of 2016, and he took three audio

3

recorded statements from J.D., M.G., and A.C. in 2016 that were assigned to another case in Harris County, but he believed that the district attorney in this case received a copy of them. Elliott described the 2016 statements of J.D., M.G., and A.C. as "related in some ways[]" to this case.

Testimony of the SANE

A SANE from Christus St. Elizabeth's Hospital in Beaumont testified that she is a forensic nurse and that she conducted an examination of M.D. on July 27, 2014. The SANE explained prior to the SANE examination, she was informed that M.D. had urinated and changed clothes, she had "wiped and washed as well as bathed but not showered[]" and that washing and bathing can potentially wash away evidence. According to the SANE, M.D. showed no injury on her physical or genital exam. The SANE explained that when sexual abuse involves only touching, she would not necessarily expect to find any trauma. The SANE testified that M.D. told her "I said to my mom somebody touched me, my grandpa, Joey. He touched me in the private . . . with his hand. He did it like two days ago at nighttime. I was in bed. He touched my skin. I was sleeping in his bed." According to the SANE, M.D. pointed at "her girl part" or vulva as she said this, and the SANE also testified that M.D. told her "Joey" was her grandfather. The SANE also explained that, during the genital exam,

4

M.D. pointed to her inner labial area and said, "He touched me here at the 12:00 o'clock spot." The SANE testified that her exam included taking swabs.

Testimony of J.D.

J.D. testified that M.D. is currently eleven years old and in fifth grade. J.D. is M.D.'s mother, and Evans is J.D.'s father. J.D. agreed that Evans lived in the house depicted in State's Exhibit 1. According to J.D., three years prior to trial, M.D. told J.D. about being sexually abused. J.D. explained that while she was helping M.D. with her bath, she observed M.D. was "acting different[,]" and she was quiet and not as playful as usual. M.D. then told J.D.

> Something happened at grandpa's. I wanted to tell you, but I'm scared that you're going to be -- I don't want nobody to get mad.
>
> . . . .
>
> Remember you used to tell me about stuff that people are not supposed to touch you? Well, grandpa touched me in my parts where guys ain't supposed to touch you.

J.D. explained that M.D. was referring to "[h]er vagina area, her private area[,]" and M.D. patted her genital area as she spoke. J.D. further testified that M.D. told her that M.D. and her grandpa were lying on his bed together after dark while he was babysitting her, and M.D. demonstrated how her grandpa touched her "private area[]" by patting herself and moving her hand back and forth. J.D. testified that M.D. told her it happened the day before and that M.D. felt scared. According to

J.D., M.D. told her that the touching happened two times, and that on one occasion, her grandpa had "dirty movies" with naked people playing on the TV, M.D.'s brother was also lying in the bed sleeping, and her grandpa purposefully touched her leg with part of his body. J.D. also reported that M.D. told her that her grandpa gave her a sip of his beer to drink. According to J.D., after M.D. told her about this, J.D. took her daughter to the Liberty County Sheriff's Office to make a report. J.D. agreed that M.D. was given a sexual assault exam.

J.D. explained that the touching of M.D. by Evans occurred when Evans was babysitting M.D. and M.D.'s brother, but that J.D. did not know Evans had picked up her children until the children were already at Evans's house and M.D. called her. J.D. was upset when she learned Evans had picked up her children because he was not allowed to go to her house when she was not there. J.D. explained that she had been sexually abused by her father—Evans—beginning when she was nine years old, sometimes twice a week. She testified that she and Evans would be lying on a pallet on the floor, Evans would tell her scary stories, her mother would be sleeping on the bed, and Evans would touch her genital area, "[t]hen he started having sex with [her]." J.D. explained that the sexual abuse involved Evans touching her genitals as well as penetration by Evans's penis.

J.D. explained that sometimes Evans would give her and her cousins beer, wine coolers, Somas, or Xanax. She, her sister A.C., and her cousin M.G. would dance and strip for Evans.

According to J.D., when she was about fifteen or sixteen, she told her grandmother about the sexual abuse she experienced, but her grandmother did not want J.D. to tell. At some point, J.D. went to the police station with her cousin and his wife, but J.D. was afraid she could not go back home and did not have another safe place to go. J.D. testified that she stopped the abuse by leaving home at age eighteen.

Following J.D.'s testimony on direct examination, the trial court gave the following jury instruction:

> Ladies and gentlemen of the jury, regarding the testimony of this witness as that testimony relates to what's known as extraneous crimes or other bad acts, extraneous being testimony that relates to crimes or acts that do not form the basis of the criminal charges currently on trial against the defendant, before you can consider such evidence for any purpose you must find and believe beyond a reasonable doubt that the defendant committed these extraneous crimes and bad acts.
> Then you may consider the evidence for any bearing the evidence may have on matters that are relevant to the issues in this case including the character of the defendant and acts performed in conformity with the character of the defendant.

<u>Testimony of M.G.</u>

M.G. testified that Evans is her uncle, and that J.D. and A.C. are her cousins. M.G. explained that she grew up living in her grandparents' home along with her mother and brother, Evans and Evans's wife, and J.D. and A.C. M.G. testified that she was a victim of sexual abuse during her childhood, that Evans had purposefully touched the inside of her vagina with his fingers and his penis, had talked to her about sexual activity, and had made her and J.D. watch pornography. M.G. explained the abuse began when she was "between 9, 10, and 11[]" years of age until she was about twelve. M.G. testified that she had observed Evans touching J.D.'s genital area, and that J.D. was present when Evans had intercourse with M.G. According to M.G., on some instances when the sexual touching occurred, Evans gave her "Mad Dog 20/20[,]" wine coolers, and Soma. M.G. explained that at times, she, J.D., and A.C. "played stripping[]" while Evans threw "fake money" at them. According to M.G., she felt "awkward[]" at the time of these occurrences, but she did not tell anyone in the family about it.

M.G. testified that she told her grandmother about the sexual touching about three years prior to trial, and her mother and Evans were present when she did so. She also told a law enforcement officer in Liberty on behalf of her cousin M.D., because she believed something similar happened to M.D.

8

<u>Testimony of A.C.</u>

A.C. testified that Evans is her father, that J.D. is her sister, and that M.G. is her cousin. According to A.C., she was sexually abused by Evans as a child. A.C. explained that the abuse began when she was about ten years old with "strip dancing[]" and that Evans would give her "beer and Mad Dog 20/20[]" and Soma during these occurrences. According to A.C., J.D. and M.G. strip danced with her, and Evans would reward her with a Barbie doll. A.C. recalled that at one point, Evans took pictures of the girls in lingerie and then took off her clothes and touched the outside of her vagina with his penis. A.C. testified that the sexual abuse stopped when she was about twelve years old.

A.C. explained that, when these instances occurred, she did not know they were wrong and that her mother was "[a]t the bar[]" when it happened. According to A.C., she told her grandmother about what happened, her grandmother did not call the police, and her grandmother cried and was upset at her and J.D. because "[s]he thought [they] were making up lies." A.C. explained that about three years prior to trial, she told the Cleveland Police Department about the sexual abuse she experienced because she learned it also happened to her niece M.D.

Following A.C.'s testimony on direct examination, the trial court instructed the jury as follows:

9

Members of the jury, you have heard evidence from [M.G.] as well as [A.C.] concerning extraneous crimes or acts allegedly committed by the defendant.

Before you can consider such evidence for any purpose, you must first find and believe beyond a reasonable doubt that the defendant committed these other crimes or bad acts.

Then you may consider the evidence for any bearing it may have on matters relevant to the issues in this case including the character of the defendant and acts performed in conformity with that character of the defendant.

Testimony of M.D.

M.D. was eleven years old at the time of trial. M.D. testified that Evans was her grandfather, J.D. was her mother, A.C. was her aunt, and M.G. was her mother's cousin. M.D. identified the defendant as her grandfather.

M.D. testified that when she was eight years old, her grandfather touched her in his bedroom while he was not wearing any clothes, and it made her sad and "[a] little bit petrified." M.D. explained that the touching happened two times. According to M.D., when Evans touched her, "[n]aked people[]" were on the TV, which Evans had said was "porn[,]" and her brother was in the same room sleeping. M.D. testified that when she left her grandfather's house that day, she was scared because she was afraid that if she told her mother, her mother would not believe her.

M.D. explained that Evans touched her with his hand on purpose like he was rubbing her, and M.D. pointed to her genital area to show where she was touched. M.D. also pointed to the genital area on an anatomically-correct doll to show where

10

Evans touched her with his hand. In addition, M.D. circled what she called the "private area" on a drawing of a girl to show the place where Evans touched her. M.D. explained that after Evans touched her, she told her mother when she was back at her own home and in the bathtub, and explained to her mother it happened more than once. M.D. testified that her mother took her to a hospital for an examination.

Testimony of B.R.

B.R. was fifteen years old at the time of trial and he testified that M.D. is his sister, and J.D. is his mother. B.R. identified Evans as his grandfather. B.R. testified that he did not see Evans take off his clothes or M.D.'s clothes or do or say anything inappropriate to M.D. B.R. recalled that Evans wore jeans and a shirt to bed and that M.D. wore jeans and a shirt to bed also. B.R. explained that when they went to bed at Evans's house "[t]here [were] two TVs. One was on top. One was on [the] bottom. The bottom one had porn on it[]" and that B.R. had seen Evans put a dvd on. B.R. testified that porn was playing on the TV for three nights. B.R. explained that he did not have a good summer that year "[b]ecause [he] was drinking and smoking[]" and that Evans had given him beer and wine coolers.

Testimony of J.M.

J.M. testified that Evans is her son, and that J.D., A.C., and M.G. are her grandchildren. J.M. recalled that about two years earlier, M.D. and B.R. had spent

11

the night at her house two times, that the children slept in Evans's room, and that on both nights, Evans was outside on a lawn chair and later came inside and laid down in his brother's room. J.M. recalled looking in on the children during the night and she saw "Little Dora[]" playing on the TV.

The jury found Evans guilty. The jury assessed punishment at seventy-five years imprisonment and a fine of $10,000.

Jury Charge Error

Appellant argues that the jury charge was flawed in two respects. First, Appellant argues that the jury charge contained "a fatally defective definition of 'intentionally' and a superfluous definition of 'knowingly[.]'" Appellant argues that the definitions given by the trial court are flawed because they are "result of conduct" definitions—that is, application of such definitions results in the criminalization of intentional or knowing touching alone, rather than touching with the intent to arouse or gratify someone's sexual desire. Appellant also argues that including a definition of "knowingly" was error because it allowed the jury to convict Evans for a lesser culpable mental state than what the statute requires.

Second, Appellant argues that the jury charge failed to instruct the jury that its verdict must be limited to one episode of conduct and it did not require unanimity as to which of two alleged instances of conduct could have constituted indecency.

According to Appellant, "the testimony reflected that there were two instances which could have constituted Indecency: Evans'[s] touching of [M.D.]'s genitals on the two separate nights[.]" Appellant argues that the testimony alleged "two separate incidents" and not "one, continuous criminal episode[,]" and that the jury "was free to offer a mixed bag conviction, where some believed one incident occurred, but not the other, and the remainder of the jury believed just the opposite[.]" Appellant further argues that failure to require unanimity regarding a specific instance of criminal conduct allowed Appellant to be convicted by a non-unanimous jury.

Appellant concedes that his attorney did not object to the jury charge at trial. Reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to the appellant, not merely theoretical harm. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Actual egregious harm is established if the jury charge affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Arrington*, 451 S.W.3d at 840; *Almanza*, 686 S.W.2d at 172. This analysis is fact-specific and is done on a case-by-case basis. *Arrington*, 451 S.W.3d at 840 (citing *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

In this case, the jury charge began as follows:

13

The defendant, JOSEPH HENRY EVANS, JR., stands charged in the indictment with the felony offense of Indecency with a Child by Sexual Contact, alleged to have been committed on or about the 26th day of July, 2014, in Liberty County, Texas. . . .

. . . .

. . . The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed before February 18, 2015.

The jury charge then included the following definitions:

A person commits an offense if, with the intent to arouse or gratify the sexual desire of any person and with a child younger than 17 years, the person engages in sexual contact with the child or causes the child to engage in sexual contact.

"Child" means a person younger than 17 years of age.

"Sexual contact" means any touching of, including touching through clothing, any part of the genitals of another person with the intent to arouse or gratify the sexual desire of any person.

. . . .

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The application section of the jury charge instructed as follows:

You must decide whether the State has proved, beyond a reasonable doubt, four elements. The elements are that:

1. On or about the 26th day of July, 2014, in Liberty County, Texas;

14

2. The defendant, JOSEPH HENRY EVANS, JR., did then and there, with the intent to arouse or gratify the sexual desire of said defendant;

3. Engage in sexual contact with [M.D.], a pseudonym, by;

4. Touching the genitals of [M.D.], a pseudonym, a child younger than 17 years of age.

You must all agree on elements 1, 2, 3, and 4 listed above.

If you all agree the State has proved each of the four elements listed above, beyond a reasonable doubt, you must find the defendant "guilty."

If you all agree the State has failed to prove, beyond a reasonable doubt, one or more of the elements 1, 2, 3, or 4 listed above[,] you must find the defendant "not guilty."

Finally, the jury charge included the following:

After you retire to the jury room, you should select one of your members as your Foreperson. It is his or her duty to preside over your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto.

Mental State

Section 21.11(a)(1) of the Texas Penal Code states,

(a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person:
(1) engages in sexual contact with the child or causes the child to engage in sexual contact[.]

Tex. Penal Code Ann. § 21.11(a)(1) (Indecency with a Child). The gist of the offense

of indecency with a child is a defendant's having sexual contact with the

complainant. *See Clark v. State*, 558 S.W.2d 887, 891 (Tex. Crim. App. 1977).

15

"Sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. *See* Tex. Penal Code Ann. §§ 21.01(2) (West 2011), 21.11(c) (West Supp. 2017).

The indictment alleged that Evans engaged in sexual contact with M.D. "with the intent to arouse or gratify the sexual desire of said defendant[]" by touching M.D.'s genitals. The application paragraph of the jury charge tracks the language of the indictment. When the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296-97 (Tex. Crim. App. 1994); *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd) (finding no egregious harm where jury instruction on indecency erroneously included a mental state of "intentionally or knowingly"). Furthermore, intent or mental state was not a contested issue at trial. *See Reed*, 421 S.W.3d at 30. Throughout trial and during closing arguments, the defense focused on reasonable doubt and not whether Evans possessed the culpable mental state for the offense. *Id.* (no egregious harm in jury charge on indecency where defense theory was that child's outcry was fabricated, not that defendant lacked the requisite mental state); *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) ("Where no defense is presented which would

16

directly affect an assessment of mental culpability, there is no harm in submitting [an] erroneous definition[] of 'intentionally' and 'knowingly.'"). Therefore, even assuming without deciding that the jury charge was erroneous, we conclude that Appellant has not shown that any such error was egregious. *See Arrington*, 451 S.W.3d at 840.

Unanimity

"Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). "This means that the jury must agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Id.* (internal quotation omitted). A non-unanimous verdict may result if the jury charge fails to instruct the jury, "based on the indicted offense(s) and specific evidence in the case, that its verdict must be unanimous." *Id.*

"[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id.* at 772. To ensure unanimity, the charge would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution. Non-unanimity might also occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple occasions.

Or non-unanimity might occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute. *Id.* at 772.

In *Cosio*, the defendant alleged that the jury charge erroneously allowed for a non-unanimous verdict when there was evidence of multiple instances of misconduct that supported each count of aggravated sexual assault and indecency with a child. *See id.* at 770, 774. The "standard, perfunctory unanimity instruction[,]" like the one given at Evans's trial, did not rectify the error in *Cosio* because although the jury could have believed it had to be unanimous about the offenses, the jury could have also believed it did not have to be unanimous about the criminal conduct constituting the offenses. *See id.* at 774; *see also Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (holding that a jury charge that allows for a non-unanimous verdict concerning what specific criminal act the defendant committed is error).

For purposes of this appeal, we assume without deciding that the testimony at trial would have enabled the jury to rely on separate instances of criminal conduct to form a non-unanimous verdict. However, we note that the nature of the alleged multiple instances of criminal conduct differs significantly from that in *Cosio*. In *Cosio*, the complainant testified in detail about distinct instances of misconduct

18

occurring on different days, at different locations, and involving different kinds of touching. *See* 353 S.W.3d at 769. Here, Appellant does not explain how M.D.'s and J.D.'s testimony in any way distinguished the two alleged instances wherein Evans touched M.D. Nevertheless, as we explain below, we conclude that Appellant has not suffered egregious harm.

When assessing harm based on the particular facts of the case, we consider (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) the parties' arguments, and (4) all other relevant information in the record. *See Arrington*, 451 S.W.3d at 840 (citing *Almanza*, 686 S.W.2d at 171). An appellate court will "inquire about the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of the particular case." *Jourdan v. State*, 428 S.W.3d 86, 98 (Tex. Crim. App. 2014).

*1. The Entire Jury Charge*

The charge did not inform the jury that it must agree unanimously on a single incident of indecency. However, the jury charge included a unanimity instruction related to selecting a jury foreperson and included the phrase "when you have unanimously agreed upon a verdict[]" and instructed the jury that it must agree on all the elements of the offense charged. Nevertheless, we note that similar generic statements regarding unanimity have been found in other cases to be insufficient to

ensure against a non-unanimous verdict in some cases. *See Flores v. State*, 513 S.W.3d 146, 158 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also Arrington*, 451 S.W.3d at 841; *Cosio*, 353 S.W.3d at 773-74. Therefore, we cannot say that the charge in question specifically apprised the jury of the unanimity requirement with respect to a single indecency charge, and this factor weighs in favor of finding egregious harm. *See Arrington*, 451 S.W.3d at 841.

*2. The State of the Evidence*

"[U]nder this prong of an egregious harm review, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *See id.* (citing *Ngo*, 175 S.W.3d at 751-52). In this case, M.D. testified that "[i]t happened two days[.]" Her mother J.D. testified that it happened "[t]wo times[]" and "more than one[]" time. M.D.'s and J.D.'s testimony was not impeached. *See Cosio*, 353 S.W.3d at 777-78 (no actual harm where, among other factors, complainant's testimony was unimpeached). M.D. and J.D. testified that Evans touched M.D. two times, but Appellant does not explain how either of these witnesses made any meaningful distinctions between when or how the two alleged instances occurred. Nor does Appellant explain how these two witnesses' testimony invited jurors to conclude that one of the two events occurred but the other had not. *See Flores*, 513 S.W.3d at 160 (concluding no egregious harm

20

because evidence did not support jury determination that one discrete criminal act occurred but other had not); *see also Lopez v. State*, Nos. 14-15-00935-CR & 14-15-00936-CR, 2017 Tex. App. LEXIS 2012, at *12 (Tex. App.—Houston [14th Dist.] Mar. 9, 2017, pet. ref'd) (mem. op., not designated for publication). This factor weighs heavily against a finding of egregious harm. *Id.*

### 3. Arguments of the Parties

"Under this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge." *Arrington*, 451 S.W.3d at 844. In this case, neither party's arguments addressed unanimity regarding multiple instances of misconduct. The defense's closing argument generally focused on reasonable doubt. Therefore, this factor weighs neither for nor against finding egregious harm. *See id.*; *Lopez*, 2017 Tex. App. LEXIS 2012, at *12.

### 4. Other Relevant Information

The Appellant points to no other relevant information in the record that would weigh in favor of a finding of egregious harm. And, we find none. Based on the facts of this case, we conclude that "the likelihood of non-unanimity is exceedingly remote." *Jourdan*, 428 S.W.3d at 98 (no egregious harm, even though the State insisted that unanimity was not required during arguments, because the defendant's

primary defensive posture was that no sexual assault took place, and his defense did not depend on whether he penetrated the complainant's sexual organ in one of two ways alleged); *see also Cosio*, 335 S.W.3d at 777 (no egregious harm where complainant's testimony was not impeached and Cosio's defense was that complainant's testimony was not credible and the circumstances surrounding the incidents of criminal conduct did not corroborate the complainant's testimony). Viewing the evidence in the entire record together with the jury's verdict and arguments of the parties, Appellant has not shown that any error in the instructions regarding unanimity caused actual egregious harm to Appellant. *See Arrington*, 451 S.W.3d at 845; *Flores*, 513 S.W.3d at 161. We overrule Appellant's issue regarding jury charge errors.

## Sufficiency of the Evidence

Appellant argues that the evidence was legally insufficient to support a conviction for indecency. Appellant notes that some testimony suggested Evans was naked, while other testimony suggested he was clothed, and some testimony suggested pornography was playing on the TV while other testimony suggested it was a cartoon. Therefore, according to Appellant, any testimony tending to suggest that Evans acted with the intent to arouse or gratify his sexual desire was "unclear, contradicted, and requires a leap of faith[.]"

22

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is the only standard to use when determining sufficiency of evidence); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The jurors are the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to a jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see*

*also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

To establish the offense of indecency with a child by contact, the State had to prove that Appellant engaged in sexual contact with M.D., a child younger than seventeen years of age. *See* Tex. Penal Code Ann. § 21.11(a)(1). In this case, "sexual contact" is defined as touching M.D.'s genitals with the intent to arouse or gratify Appellant's sexual desire. *See id.* § 21.11(c)(1). The testimony of either a child victim or an outcry witness is sufficient to support a conviction for indecency. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2017); *Jones v. State*, 428 S.W.3d 163, 169-70 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). The State has no burden to produce any corroborating or physical evidence. *See Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006) (concluding that medical or physical evidence is not required to corroborate child victim's testimony).

Courts give wide latitude to testimony provided by child victims of sexual abuse. *See Jones*, 428 S.W.3d at 170; *Gonzalez Soto v. State*, 267 S.W.3d 327, 332

24

(Tex. App.—Corpus Christi 2008, no pet.). We liberally construe this testimony. *See Lee*, 176 S.W.3d at 457; *see also Gonzalez Soto*, 267 S.W.3d at 332 ("The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult."). The requisite intent for the offense of indecency with a child can be inferred from the defendant's conduct and remarks and all of the surrounding circumstances. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) ("[M]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."); *Gonzalez Soto*, 267 S.W.3d at 332; *Navarro v. State*, 241 S.W.3d 77, 79 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

M.D. testified that Evans touched her on purpose under her clothes and on her skin, and she pointed to her genital area to show where Evans touched her. M.D. also identified the genital area on an anatomically-correct girl doll and a drawing of a girl to show where Evans touched her, which she called her "[p]rivate area[]" and the area she uses "[t]o use the bathroom." M.D. explained that Evans was not wearing any clothes when he touched her and that "[n]aked people" were on the TV and that Evans had said it was "porn." M.D. further testified that the touching occurred in Evans's bedroom.

J.D. testified that M.D. told her that Evans had touched M.D. and that M.D. had patted her genital area to show where Evans touched her. According to J.D., M.D. moved her hand back and forth to demonstrate how Evans touched her. J.D. also explained that M.D. told her that Evans had "dirty movies" with naked people playing on the TV.

B.R., M.D.'s brother, testified that both Evans and M.D. were wearing clothes to bed. B.R. recalled that "porn" was playing on the TV at Evans's house. J.M., Evans's mother, testified that she recalled Evans sitting outside on the nights that M.D. and B.R. were at the house and that Evans later came inside and laid down in his brother's room. J.M. recalled seeing "Little Dora[]" playing on the TV.

On this record, we cannot say the State failed to present evidence that Evans touched M.D. with the intent to arouse or gratify his sexual desire. The jury's verdict finding Evans "guilty" indicates that it found M.D.'s and J.D.'s testimony credible. Because the jury was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony, we overrule Evans's challenge to the legal sufficiency of the evidence. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899; *see also* Tex. Code Crim. Proc. Ann. art. 38.07.

26

Effective Assistance of Counsel

Appellant argues that he did not receive the effective assistance of counsel because (1) his attorney failed to lodge Rule 403 objections to "the extraneous offense testimony" of three witnesses and (2) his attorney failed to object to the jury charge instructions relevant to mental state and unanimity.

To establish that he did not receive the effective assistance of counsel, Evans must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error(s), the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689). An appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's

failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The right to the effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or that the representation must be errorless. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). The appropriate context is the totality of the representation; counsel is not to be judged on isolated portions of his representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990). Isolated failures to object to improper evidence or argument ordinarily do not constitute ineffective assistance of counsel. *See Thompson*, 9 S.W.3d at 814; *Ewing v. State*, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977). In order to meet his burden regarding his claim that his counsel was ineffective for failing to object to evidence, Appellant must also establish that the trial court would have committed error in overruling such objection had an objection been made. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

## Failure to Make a Rule 403 Objection

Appellant argues that his trial attorney failed to lodge a Rule 403 objection to the extraneous-offense testimony of J.D., M.G., and A.C. Appellant does not argue that the testimony from the three women concerning their alleged abuse by Evans was not admissible under article 38.37 of the Texas Code of Criminal Procedure, but rather he argues that their testimony was unduly prejudicial and any probative value was slight. According to Appellant, the facts and circumstances of the extraneous-offenses differed from the conduct for which Evans was charged; they were remote in time, having occurred more than fifteen years before trial; the State's need for the testimony was "minimal" because no witnesses contradicted the testimony of M.D. and J.D. regarding the offense charged; and the extraneous-offense testimony was cumulative and consumed an inordinate amount of time at trial—about 27% of the reporter's record in the guilt-innocence phase of trial. Appellant argues that, but for trial counsel's failure to make a Rule 403 objection, the outcome of the trial likely would have been different because the extraneous-offense testimony was "inflammatory" because the State made little effort to tie it to M.D.'s testimony, and "[w]ithout the extraneous conduct testimony, the jury would have been left to judge the credibility of an eleven year old girl, and the hearsay testimony of the mother."

When extraneous offense evidence is relevant under article 38.37, a trial court must still conduct a Rule 403 balancing test upon proper objection or request. *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.); *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd). Evidence that is admissible may nonetheless be inadmissible under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *see also* Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will generally be more probative than prejudicial. *See Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Rule 403 also requires that relevant evidence be excluded only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001).

Unfair prejudice does not mean simply that the evidence injures the opponent's case. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). "Rather[,] it refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Cohn v. State*,

30

849 S.W.2d 817, 820 (Tex. Crim. App. 1993)). The Rule 403 balancing factors include, but are not limited to, the following: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield*, 189 S.W.3d at 787. The trial court is presumed to have engaged in the required balancing test under Rule 403 once a party objects on the ground of Rule 403 and the trial court rules on the objection, unless the record indicates otherwise. *See Williams v. State*, 958 S.W.2d 186, 195-96 (Tex. Crim. App. 1997).

The party opposing admission of the evidence bears the burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *See Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.). It is not ineffective to fail to object to admissible evidence. *See McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992) (concluding not ineffective assistance to fail to object to admissible evidence).

Assuming without deciding that a Rule 403 objection would have been appropriate and that a trial court would have sustained such objection, and even assuming without deciding trial counsel's performance was deficient for failing to make a Rule 403 objection, we conclude that Appellant has not shown that there is

31

a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-88, 694. As we have previously explained, the jury could have concluded beyond a reasonable doubt that Evans was guilty of the charged offense based solely on the uncontroverted testimony of M.D. and J.D. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Jones*, 428 S.W.3d at 169-70. Furthermore, the trial court gave a limiting instruction regarding the complained-of testimony by J.D., A.C., and M.G., and we presume that the jury followed these instructions. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Therefore, Appellant has not shown that, but for his trial counsel's failure to make a Rule 403 objection to the extraneous offense testimony, there was a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

Failure to Object to Definitions and Instructions in the Jury Charge

Appellant also argues that trial counsel's performance was deficient for failing to object to the definitions of "intentionally" and "knowingly," and he contends the effect of such deficient performance was to "lower[] the bar for a conviction[.]" Appellant also argues that trial counsel's performance was deficient for failing to request that the jury charge specifically instruct the jury that it must unanimously agree as to which incident of indecency occurred, and the effect of such failure was

32

to "allow[] for the possibility that Evans was convicted without a unanimous verdict."

We have already concluded herein that the alleged errors in the jury charge did not result in egregious harm. *See Arrington*, 451 S.W.3d at 840. Accordingly, on this record, Appellant has not shown that, but for his trial counsel's failure to object to the jury charge, the result of the proceeding would have been different. *See id.* We overrule Appellant's issue regarding the effective assistance of counsel.

Having overruled all the issues raised by the Appellant, we affirm the judgment of the trial court.

AFFIRMED.

 

 

_____
LEANNE JOHNSON
Justice

Submitted on June 29, 2018
Opinion Delivered August 29, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.